c

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| SHEILA MCLAIN,<br>Plaintiff | CIVIL ACTION NO. 1:19-CV-00454 |
| VERSUS | JUDGE DRELL |
| EDWARD GENE HERRINGTON,<br>*ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand and Opposition to *Sua Sponte* Summary Dismissal of Defendant Farm Bureau ("Motion to Remand") (ECF No. 13), filed by Plaintiff Sheila McLain ("McLain"). Defendants Edward Eugene Herrington ("Herrington"), SRT Oil Field Service, L.L.C. ("SRT"), and Cherokee Insurance Company ("Cherokee") (collectively, "Removing Defendants") oppose.[1] ECF No. 17. Defendant Hallmark Specialty Insurance Company ("Hallmark") also separately opposes. ECF No. 18.

Because Removing Defendants and Hallmark fail to establish that there is no reasonable basis to predict that McLain might be able to recover against non-diverse Defendant Farm Bureau, and because Farm Bureau's Louisiana citizenship destroys diversity, McLain's Motion to Remand (ECF No. 13) should be GRANTED for lack of

---

[1] After filing their removal and opposition, Cherokee was voluntarily dismissed, with prejudice. (Doc. 29). McLain reserved her rights against all other named Defendants. (Doc. 29). Therefore, Herrington and SRT remain as Defendants, as insureds of Hallmark. To avoid any confusion, when the Court refers to the Removing Defendants, the remaining Removing Defendants are Herrington and SRT.

jurisdiction. Because Removing Defendants demonstrated an objectively reasonable basis for removal, McLain's Motion for Attorney Fees (ECF No. 13) should be DENIED. To the extent McLain seeks to vacate this Court's previous Order (ECF No. 25) allowing Hallmark's Supplemental Opposition (ECF No. 26), McLain's motion (ECF No. 31) should be DENIED.

## I.    <u>Background</u>

McLain filed a wrongful death and survival action in the Seventh Judicial District Court, Concordia Parish, Louisiana. ECF No. 1-1 at 2-9. McLain named Defendants Herrington, SRT, Cherokee, Hallmark, and Louisiana Farm Bureau Insurance Company ("Farm Bureau") (collectively, "Defendants"). ECF No. 1-1 at 2. McLain asserts she is the surviving spouse of Richard "Scotty" McLain ("Scotty"), who died on April 11, 2018 in an automobile accident. ECF No. 1-1 at 1. McLain alleges she is the proper person to bring suit as Scotty had no children. *Id.*

Scotty was traveling in a 2012 Ford F350 pulling a utility trailer northbound to inspect farmlands on U.S. Highway 65, in Concordia Parish, Louisiana. ECF No. 1-1 at 3. McLain alleges that, as Scotty approached his lands, he pulled his truck and trailer onto the shoulder of the highway and exited the travel lane of Highway 65. *Id.* Farmhand Louis White ("White") was riding as a passenger in Scotty's vehicle. *Id.* Herrington was the permissive driver and operator of a 2017 Peterbilt 385 pulling a trailer loaded with oilfield pipe/equipment, both owned by SRT. *Id.* Herrington was traveling northbound on Highway 65 some distance behind Scotty. *Id.*

McLain contends Herrington's vehicle veered onto the shoulder and struck Scotty's vehicle from the rear. *Id.* McLain asserts Herrington's vehicle traveled onto Scotty's utility trailer and into the bed and cab of Scotty's truck, dragging the two vehicles hundreds of feet. *Id.* McLain alleges the Louisiana State Police investigation revealed Herrington admitted to falling asleep at the wheel. *Id.* Scotty was pronounced dead at the scene and McLain was notified by Louisiana State Police. *Id.*

McLain alleges Herrington was employed by SRT and acting in the course and scope of his employment at the time of the accident. ECF No. 1-1 at 4-5. McLain contends SRT had a duty to properly train and supervise its employee drivers, including Herrington, and to ensure its employees were knowledgeable and capable of operating its vehicles and understanding rules and regulations governing the operation of tractors/trailers on the highway. ECF No. 1-1 at 4. McLain alleges SRT is liable for its negligence and for the negligence of Herrington under the doctrine of *respondeat superior.* ECF No. 1-1 at p. 5. McLain also contends Herrington breached numerous duties owed to the public and other drivers on the roadway, including Scotty. *Id.*

McLain asserts Scotty sustained death, conscious pain and mental anguish, conscious fear and fright of impending death, and other injuries. ECF No. 1-1 at 6. McLain seeks damages from Defendants for Scotty's extreme pain and suffering; medical bills; loss of enjoyment of life (past, present, and future); mental anguish, mortification, fear, and fright; loss of future earning capacity; property damage and loss of use; and funeral expenses. *Id.* McLain also seeks damages for grief; mental

anguish and distress; loss of Scotty's companionship, love, moral support, guidance, consortium, and affection; and loss of financial support (past, present, and future). ECF No. 1-1 at 7.

McLain alleges that both Cherokee and Hallmark had liability insurance policies covering the vehicle operated by Herrington and owned by SRT. *Id.* McLain further alleges Farm Bureau had an uninsured/underinsured insurance ("UM/UIM") policy covering Scotty's vehicle. ECF No. 1-1 at 8. McLain asserts Defendants are liable individually, jointly, and *in solido* for compensatory damages, legal interest, costs, and attorney's fees. *Id.*

Herrington, SRT, and Cherokee removed on April 10, 2019.[2] ECF No. 1 at 1-11. Removing Defendants contend there is diversity of citizenship between McLain and the "properly joined" Defendants[3] and that the amount-in-controversy exceeds $75,000.[4] ECF No. 1 at 9.

---

[2] Hallmark consented to removal. ECF Nos. 1 at 9, 1-4.

[3] Herrington is a citizen of the State of Mississippi. ECF No. 1 at 3. SRT is a Mississippi limited liability company with its sole member being Jon S. Widener, a resident and citizen of the State of Mississippi. *Id.* Cherokee is incorporated in and has its principal place of business in the State of Michigan. *Id.* Thus, Cherokee is a citizen of the State of Michigan. *Id.* Hallmark is incorporated in the State of Oklahoma and has its principal place of business in the State of Texas. *Id.* Therefore, Hallmark is a citizen of the State of Oklahoma and the State of Texas. *Id.* McLain and Scotty are and were citizens of the State of Louisiana. ECF No. 1 at 4.

[4] Removing Defendants contend that McLain seeks damages for Scotty's death; extreme pain and suffering; property damage and loss of use; loss of future earning capacity; loss of past, present and future wages; mental anguish; loss of enjoyment of life; and funeral expenses. ECF No. 1 at 8. Removing Defendants further contend that McLain seeks damages for her grief, mental anguish, and distress from her husband's death. *Id.* Removing Defendants allege it is "facially apparent" that McLain's damages exceed the $75,000 jurisdictional limit. *Id.* McLain does not dispute that her damages exceed $75,000.

Removing Defendants contend Farm Bureau is improperly joined because McLain has no reasonable possibility of recovery against Farm Bureau.[5]  ECF No. 1 at 3, 5.  Removing Defendants allege the Court should disregard Farm Bureau's Louisiana citizenship in determining diversity jurisdiction.[6]  ECF No. 1 at 4.

In support, Removing Defendants attach Cherokee's Declarations page (ECF No. 1-2), showing liability coverage up to $2,000,000 per accident, and Hallmark's Declarations page (ECF No. 1-3), showing excess liability coverage up to an additional $5,000,000 per occurrence.[7]  ECF Nos. 1-2, 1-3.  Removing Defendants state that Farm Bureau filed a subrogation suit against them in state court to recover $53,422.15 for damages paid on behalf of McLain and Scotty.[8]  ECF No. 1 at 5.  Removing Defendants assert White filed suit against Herrington, SRT, Cherokee, and Farm Bureau for his injuries, including medical expenses of approximately

---

[5] Removing Defendants assert Farm Bureau is incorporated in and has its principal place of business in the State of Louisiana.  ECF No. 1 at 3.  Thus, Farm Bureau is a citizen of the State of Louisiana.  *Id.*  Absent improper joinder, the parties are not diverse in citizenship.

[6] Removing Defendants allege that because Farm Bureau was improperly joined, its consent to removal is not necessary.  ECF No. 1 at 9.  McLain argues Farm Bureau must consent. ECF No. 13.  "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  However, the United States Court of Appeals for the Fifth Circuit has "made clear that a removing defendant 'need not obtain the consent of a co-defendant that the removing party contends is improperly joined.'" *Mauldin v. Allstate Ins. Co.*, 757 Fed.Appx. 304, 309 (5th Cir. 2018), *cert. denied*, 18-1456, 2019 WL 4921383 (2019).  Thus, Farm Bureau's consent was not required.

[7] Removing Defendants state they are not asserting any policy exclusions or limitations regarding McLain's claims. ECF No. 1 at 4.

[8] Removing Defendants contend the payments by Farm Bureau were for property damages, medical payments coverage, death benefits, and the McLain's deductible.  ECF No. 1 at 5.

$113,240.88.  ECF No. 1 at 5.[9]  Removing Defendants contend that Farm Bureau's and White's potential recovery, combined with McLain's potential recovery, will not exhaust the $7,000,000.00 of available coverage.  *Id.*

McLain now seeks remand (ECF No. 13) for lack of diversity because both McLain and Farm Bureau are citizens of Louisiana.  ECF No. 13 at 1-2.  McLain argues that Removing Defendants fail to establish or provide any evidence that there is no possibility of recovery against Farm Bureau such that joinder was improper.  ECF No. 13 at 2-3.  McLain also seeks attorney's fees and costs.  ECF No. 13, p. 3.

Removing Defendants oppose.  ECF No. 17.  In support, Removing Defendants attach Scotty's statement of funeral expenses (ECF No. 17-2), burial expenses (ECF No. 17-3), memorial contract (ECF No. 17-4), flower expenses (ECF No. 17-5), and the economic expert report of McLain's expert, Charles O. Bettinger, III ("Bettinger") (ECF No. 17-6).[10]  Removing Defendants argue that their statement that no policy exclusions or limitations of liability will be asserted by Cherokee is a judicial admission.  ECF No. 17 at 10-11.  Removing Defendants also argue that Hallmark asserted no coverage defenses or denials in its Answer.  ECF Nos. 10, 17 at 12.  Removing Defendants also submit evidence and a quantum, arguing that the total

---

[9] On April 18, 2019, Removing Defendants also removed White's state court action to this Court, where it is currently pending.  *See White, Jr. v. Herrington, et al.*, Civil Action No. 1:19-cv-00498.  In that action, Removing Defendants assert McLain and Farm Bureau (as McLain's liability insurer) are improperly joined.  That action remains pending before this Court and no remand motions were filed.

[10] Removing Defendants assert Cherokee paid $15,251.74 in funeral expenses and that $1.985 remains available of the $2 million-dollar primary policy.  ECF No. 17 at 8.

potential recovery against them and Hallmark does not exceed $7,000,000.  ECF Nos. 17 at 12-22, 17-1 – 17-6.

Hallmark filed a separate opposition, essentially adopting and incorporating the opposition filed by Removing Defendants.[11]  ECF No. 18.  Hallmark contends that no Defendant has asserted a coverage defense and that Hallmark did not send a reservation of rights letter.  ECF No. 18 at 4.  In support, Hallmark attached its Declarations page (ECF No. 18-1) and Bettinger's expert report (ECF No. 18-2).[12]  Cherokee has now been voluntarily dismissed with prejudice.  ECF No. 29.

---

[11] McLain asserts Hallmark's opposition is untimely and should be stricken. ECF No. 19. The deadline for filing an opposition to the Motion to Remand (ECF No. 13) was May 28, 2019. ECF No. 14. Upon motion (ECF No. 15), the Court granted an extension until June 7, 2019 for Herrington, SRT, and Cherokee to file their opposition. ECF No. 16. Hallmark did not file an opposition by May 28, 2019 and did not request an extension. Hallmark then filed its opposition untimely on June 7, 2019. ECF No. 18. The Court thereafter granted leave (ECF No. 25) to Hallmark to file a Supplemental Memorandum in Opposition (ECF No. 26), retroactively authorizing Hallmark's delay. Additionally, McLain replied in opposition to Hallmark's Opposition (ECF No. 18) and Supplemental Memorandum in Opposition (ECF No. 26). ECF Nos. 19, 31. McLain asserts Hallmark raises no new facts relevant to the Court's consideration of her remand motion. ECF No. 31 at 2-3. McLain argues that the "recent development" reported by Hallmark regarding mediation and settlement changes nothing as to the propriety of joinder of Farm Bureau. ECF No. 31 at 3. Additionally, McLain contends Hallmark's untimeliness should not be excused under the guise of it providing "new law" when citing to a 2003 decision. ECF No. 31 at 4. District courts have broad discretion as to whether to consider untimely filings, including oppositions to motions. *See Nelson v. Star Enter.*, 220 F.3d 587 (5th Cir. 2000); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995); *see also* Fed. R. Civ. P. 6(b). Because the Court finds no prejudice to McLain in that she has been allowed the opportunity to respond and because both Hallmark and McLain were granted leave to file additional briefings after Hallmark filed their untimely opposition (ECF Nos. 25, 30), the Court exercises its discretion and considers Hallmark's opposition (ECF No. 18) and supplemental opposition (ECF No. 26). To the extent McLain's response seeks to vacate this Court's previous Order (ECF No. 25) allowing Hallmark's Supplemental Opposition, McLain's motion (ECF No. 31) is DENIED.

[12] McLain objects to Defendants' use of Bettinger's report, which McLain asserts was an economist hired to estimate McLain's lost future earnings for the purposes of settlement and that he has not been identified as an expert. ECF No. 19 at 2 n. 1.

## II.    Law and Analysis

### A.    Standards governing the Motion to Remand.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Jurisdictional facts are determined at the time of removal, not by subsequent events. *See La. v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a). The removing party bears the burden of establishing diversity jurisdiction. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.* Here, the parties do not dispute that the amount-in-controversy requirement is met, but dispute whether the complete diversity requirement is satisfied.

### B.    Defendants bear the burden of establishing improper joinder.

The issue before the Court is the alleged improper joinder of Farm Bureau, a non-diverse Defendant. ECF No. 1. The doctrine of improper joinder is a narrow

exception to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing 28 U.S.C. § 1441(b)). "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Cuevas*, 648 F.3d at 249 (quoting *Smallwood*, 385 F.3d at 573). When, as here, the second method is at issue,

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

*Cuevas*, 648 F.3d at 249 (internal citations and quotations omitted) (emphasis added).[13] "A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

The removing party "bears a heavy burden of proving that the joinder of the in-state party was improper . . . that is, to show that sham defendants were added to

---

[13] Removing Defendants and Hallmark do not allege there is actual fraud in the pleadings.

defeat jurisdiction." *Smallwood*, 385 F.3d at 574-75; *see also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). A court does not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so. *Guillory v. PPG Indust., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (citations omitted). "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

### C. The Court may, and does, "pierce the pleadings" to consider the "summary-judgment-type" evidence filed by the parties.

Removing Defendants and Hallmark assert McLain has no possibility of recovery, or "no reasonable basis" of recovery, against non-diverse Defendant Farm Bureau. The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. A court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573 (citations omitted).

However, merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant, does not mean that the joinder of the resident defendant is proper. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (citations omitted). In the second setting for the "no reasonable basis" contest, the defendant may challenge the plaintiff's allegations and attempt to demonstrate by "summary-judgment-type" evidence that the plaintiff is unable to prove all the facts necessary to prevail. *International Energy Ventures Mgmt., LLC*

*v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). "[A] court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both." *Id.*; *see also Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court.").

The Fifth Circuit cautions against piercing the pleadings, except in limited circumstances. *Smallwood*, 385 F.3d at 537. The Fifth Circuit has instructed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (citations omitted). Thus, the summary inquiry determines if there are "discrete and undisputed facts that would preclude recovery against the in-state defendant." *Id.* at 573-74 (citing as examples where "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved as not true"). A court may proceed beyond the pleadings to analyze "whether the defendant has demonstrated that there is no possibility of recovery." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) (citing *Smallwood*, 385 F.3d at 573)). Although a court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

11

Here, Removing Defendants and Hallmark submit summary-judgment-type evidence to establish McLain has no potential recovery against Farm Bureau, such that joinder of Farm Bureau is improper and may be disregarded in determining diversity jurisdiction. ECF Nos. 1-2, 1-3, 18-1, 18-1, 26-1.[14] Thus, in its discretion and to the extent that Removing Defendants and Hallmark have presented evidence relevant to improper joinder, the Court pierces the pleadings to identify and evaluate the presence of discrete and undisputed facts that would establish that McLain has no potential recovery against Farm Bureau, the in-state Defendant. *Smallwood*, 385 F.3d at 573-74; *see also Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016).

### D. Removing Defendants and Hallmark fail to establish that there is no reasonable basis to predict McLain might recover against non-diverse Farm Bureau.

Removing Defendants premise removal on the improper joinder of Farm Bureau. ECF No. 1. McLain asserts claims against non-diverse UM/UIM motorist carrier Farm Bureau. ECF No. 1-1 at 8. Removing Defendants and Hallmark contend that the primary $2,000,000 Cherokee policy in addition to the excess $5,000,000 Hallmark policy are enough to cover McLain's alleged damages. ECF Nos. 1 at 6, 18 at 1-8. Removing Defendants and Hallmark assert McLain has no reasonable basis for recovery of the $25,000 Farm Bureau UM/UIM policy given the

---

[14] Removing Defendants do not allege McLain fails to state a cause of action against Farm Bureau under Louisiana law. ECF Nos. 1 at 1-11, 13-1 at 3. Instead, Removing Defendants rely on summary-judgment-type evidence to establish McLain has no reasonable basis for recovery against non-diverse Defendant Farm Bureau.

$7,000,000 in underlying coverage. ECF No. 1 at 6-7.[15] McLain argues this contention is conclusory and that Removing Defendants provide no evidence supporting this contention. ECF Nos. 13 at 2, 13-1 at 9. McLain also asserts Removing Defendants fail to provide any evidence of the potential value of White's claim, which will reduce McLain's available recovery from Defendants. ECF Nos. 13 at 3, 13-1 at 10.

After removal, Cherokee was voluntarily dismissed after paying its $2,000,000 policy to McLain and White. ECF Nos. 26, 29. It is undisputed that Cherokee's $2,000,000 primary policy has been exhausted. Thus, at issue is the availability of Hallmark's $5,000,000 excess policy.[16]

In seeking remand, McLain takes issue with Removing Defendants and Hallmark's assertions that the $7,000,000 underlying coverage is available to her. ECF No. 13-1 at 6. McLain contends Hallmark has not waived its coverage defenses and has not stipulated as to coverage, thus invoking the potential for recovery of Farm Bureau's $25,000 UM policy. ECF No. 13-1 at 11-17. McLain asserts that, at the time she filed suit, she had no knowledge of the coverages provided by Hallmark and no verification of coverages provided by Cherokee. ECF No. 13-1 at 6. It is axiomatic

---

[15] In their Supplemental Opposition (ECF No. 26), Hallmark attached Farm Bureau's Declarations page (ECF No. 26-1, pp. 1-2) reflecting UM/UIM injury limits in the amount of $25,000 per person/$50,000 per accident.

[16] The excess liability insurer provides coverage that begins only after a predetermined amount of primary coverage is exhausted. *Hanover Ins. Co. v. Superior Labor Services, Inc.*, 2017 WL 2984867, at *17 (E.D. La. July 12, 2017) (citations omitted). "It is not until the claim exceeds the limits of an insured's primary coverage that the excess insurer has a duty to defend the insured." *Id.* (citing *American Home Assur. Co. v. Czarniecki*, 230 So.2d 253, 260 (La. 1970)).

that if Hallmark's $5,000,000 excess policy did not provide coverage, or that an exclusion was applied, McLain's damages would reach Farm Bureau's $25,000 UM policy. The point of contention is whether Hallmark waived, judicially admitted, or stipulated as to coverage such that McLain, in fact, has $5,000,000 of excess coverage available to her after exhaustion of the $2,000,000 Cherokee primary policy.

McLain argues that Removing Defendants attached unauthenticated hearsay copies of the Cherokee and Hallmark declarations pages, thus failing to illustrate the exclusions and conditions contained in the actual policies and addendums. ECF No. 13-1 at 12. McLain contends that the assertions as to underlying coverage in Removing Defendants' Notice of Removal are not binding stipulations and are subject to potential amendment later. *Id.* McLain further argues that Removing Defendants' statements do not comport with their Answer in which the policies are alleged in their entirety. ECF No. 13-1 at 13. McLain concedes that Removing Defendants admitted they had a policy in effect at the time of the accident that provided coverage, but she argues they denied that the policy required Cherokee to pay for all damages. *Id.*

McLain also asserts that Hallmark is not bound by the assertions in Removing Defendants Notice of Removal and that no evidence shows Hallmark waived any exclusions available to it under the excess policy. *Id.* McLain argues Hallmark generally denied even the most basic facts alleged in the Petition. ECF No. 13-1 at 13-14.

Removing Defendants attach Scotty's statement of funeral expenses (ECF No. 17-2), burial expenses (ECF No. 17-3), memorial contract (ECF No. 17-4), flower

14

expenses (ECF No. 17-5), and the economic expert report of McLain's expert, Charles O. Bettinger, III ("Bettinger") (ECF No. 17-6). Removing Defendants argue that the available evidence demonstrates removal was proper and that there is "no realistic possibility" that the damages awarded to McLain, White, and Farm Bureau will exceed the $7,000,000 in available coverage. ECF No. 17 at 8. Removing Defendants assert that their statement – that no policy exclusions or limitations of liability will be asserted by Cherokee – is a judicial admission. ECF Nos. 1 at 4, 17 at 10-11 (citing *Hunter v. Sirmans*, 2008 WL 4717067, at *3 (W.D. La. Aug. 15, 2008); *Davis v. Trinidad Drilling LP*, 2013 WL 1637243, at *1 (W.D. La. 2013)).

In *Hunter*, the removing defendants stated in their notice of removal that Liberty Mutual issued a commercial auto liability policy with a single limit liability coverage of $1 million dollars, and attached a copy of the declarations page and policy. *Hunter*, 2018 WL 4717067, at *3. This Court found that although not stated expressly and not "stipulated," removing defendants clearly and unmistakably implied that the $1 million policy provided coverage in that amount for the claims alleged by plaintiff. *Id.* In *Hunter*, the court deemed "those submissions a judicial admission of that fact." *Id.* (noting that "[d]efendants will not be able to later deny coverage or assert a lower coverage limits without incurring the risk of substantial sanctions").[17] Removing

---

[17] Under Louisiana law, "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." La. Civ. Code art. 1853; *see also Cichirillo v. Avondale Industries, Inc.*, 917 So.2d 424, 428-29 (La. 2005) ("A judicial confession is a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission – of withdrawing the subject matter of the confession from issue.") (citing *Cheatham v. City of New Orleans*, 378 So.2d 369, 375 (La. 1979)).

Defendants also argue Hallmark asserted no coverage defenses or denials in its Answer. ECF Nos. 10, 17 at 12.

McLain alleges in her Petition:

19.

Upon information and belief, HALLMARK INSURANCE COMPANY, had in full force and effect at the time of the accident, a policy of liability insurance coverage covering the vehicle operated by Edward Gene Harrington and owned by SRT OIL FIELD SERVICE, LLC. Under said policy, HALLMARK INSURANCE COMPANY, agreed to pay for all damages arising out of the use, maintenance, and operation of the truck/tractor at issue in these proceedings and to further indemnify the owner for any damages which it's[sic] employees, agents, successors, or assigns might be liable, including, but not limited to the damages of the natured claimed herein. Therefore, HALLMARK INSURANCE COMPANY is a proper party defendant.

20.

At the time of the accident, Defendant, LOUISIANA FARM BUREAU INSURANCE COMPANY, had in full force and effect a policy of uninsured/underinsured motorist insurance covering the 2012 Ford F350 owned and operated by RICHARD SCOTTY MCLAIN under the terms, conditions, and provisions of which, assume liability for damages such as herein sued for by the Plaintiff and has failed to pay sums due under such policy. Therefore, LOUISIANA FARM BUREAU INSURANCE is a proper party defendant.

ECF No. 1-1 at 7-8.

In its Answer, Hallmark denies McLain's allegations and responds to paragraph 19 of the Petition, stating:

The allegations found in Paragraph 19 are admitted to the extent that Hallmark Specialty Insurance Company issued an insurance policy which is the best evidence of the terms and conditions afforded thereby. Hallmark Specialty Insurance Company pleads the entirety of its policy in response to this allegation. Hallmark Specialty Insurance Company further asserts that it is an excess policy, and its policy is applicable only after other policies participate. Any and all allegations of liability on its

16

behalf or any insured are denied for lack of sufficient information to justify a belief therein.

ECF No. 10 at 4-5. Additionally, Hallmark asserted "all affirmative defenses pled by SRT Oilfield Service, LLC and Edward Gene Harrington," including comparative fault, pre-existing conditions, failure to mitigate, and a reservation of rights to raise any additional defenses, affirmative or otherwise. ECF No. 10 at 4. Hallmark also in its affirmative defenses "pleads its entire policy and notes it is an excess policy that only provides coverage after primary policies, including the Cherokee Insurance Company policy, have been exhausted."[18] *Id.*

However, in its opposition to remand, Hallmark joins Removing Defendants in arguing it "did not assert a coverage defense and no reservation of rights letters were sent to any of the named Defendants." ECF No. 18 at 4. Hallmark attaches its declarations page showing excess liability limits in the amount of $5,000,000. ECF No. 18-1 at 1. Hallmark states this "proves that Hallmark provided coverage for this case." ECF No. 18 at 4. Hallmark also asserts that, just as in *Hunter*, their admission of coverage should be deemed a judicial admission of fact which would preclude any coverage defense. ECF No. 18 at 5.

A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "A judicial admission 'has the effect of

---

[18] Cherokee's $2,000,000 primary policy has now been exhausted in settlement with McLain and White. ECF No. 26 at 2. It is clear that by Hallmark pleading its policy in its entirety, that this would include the potential that they assert any and all exclusions or policy coverage provisions contained therein. However, Hallmark did not expressly plead any coverage defenses or exclusions.

17

withdrawing a *fact* from contention.'" *Blankenship v. Buenger*, 653 Fed.Appx. 330, 335 (5th Cir. 2016) (quoting *Martinez*, 244 F.3d at 476) (emphasis in original). Accordingly, judicial admissions generally concern issues of fact and are inapplicable to questions of law. *See Blankenship*, 653 Fed.Appx. at 335 & n.15. "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 n.2 (5th Cir. 2014) (quoting *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)). Courts retain discretion to treat statements in briefs as judicial admissions. *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990).

Here, both Removing Defendants and Hallmark intentionally, unequivocally, and clearly state in their briefs that there is $7,000,000 in primary and excess coverage available to McLain, and that no coverage defenses, policy exclusions, or limitations of liability of coverage will be asserted. ECF Nos. 1, 17, 18. Additionally, both Removing Defendants and Hallmark concede that such assertions could be treated as judicial admissions of fact to which they are bound. *See e.g. Hunter*, 2008 WL 4717067, at *3. Thus, the Court, in its discretion, deems the admissions of Removing Defendants and Hallmark in their Notice of Removal and memoranda in opposition to the motion to remand, respectively, to be judicial admissions of the fact

that the Cherokee $2,000,000 policy and the Hallmark $5,000,000 policy provide coverage for the claims alleged by McLain.

As noted, Cherokee's $2,000,000 primary policy has already been exhausted. The remaining issue is whether McClain's claims, accounting for the reduction of available coverage by the claims of White and Farm Bureau, potentially exceed the remaining $5,000,000 Hallmark excess policy. McLain asserts her recovery against non-diverse Farm Bureau is highly likely in the absence of the Hallmark policy. ECF No. 19 at 2. McLain argues there is no binding stipulation that Hallmark has waived its coverage defenses. ECF No. 19 at 3. Yet, as discussed above, Hallmark judicially admitted available coverage in the amount of $5,000,000.[19] Thus, the Court must determine whether Removing Defendants and Hallmark have established that "no reasonable basis" exists to predict that McLain has a potential recovery against Farm Bureau.[20]

---

[19] Moreover, "waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief it has been relinquished." *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La. 1994) (citation omitted). "A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered." *Id.* "[W]hen an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense." *Id.* at 1216.

[20] For purposes of underinsured insurance coverage, an underinsured motor vehicle is one whose "automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured [of the underinsured motorist insurer] and/or the passengers in the insured's vehicle at the time of an accident . . . ." La. R.S. 22:1295(2)(b); *see also Gillmer v. Parish Sterling Stuckey*, 2009-0901 (La. App. 1 Cir. 12/23/09), 30 So.3d 782, 785. The burden of proving the underinsured status of the offending motorist rests with the plaintiff. La. R.S. 22:1295(6)(d); *see also Swift v. State Farm Mut. Auto Ins. Co.*, 796 F.2d 120, 122 (5th Cir. 1986); *Campbell v. American Home Assur. Co.*, 258 So.2d 81, 84 (La. 1972).

According to Removing Defendants, federal district courts have repeatedly held that a non-diverse UM/UIM motorist carrier is improperly joined when the plaintiff's claims are unlikely to exceed the underlying liability limits. ECF No. 1 at 6 (citing *Hunter*, 2008 WL 4717067, at *3 (finding that non-diverse underinsured motorist carrier was improperly joined where plaintiff's damages could not possibly exceed the $1,000,000 underlying liability limits); *Montana v. Progressive Gulf Ins. Co.*, 2019 WL 290643, at *4 (E.D. La. Jan. 23, 2019) (finding that non-diverse UM carrier was fraudulently joined where the three plaintiffs' cumulative damages did "not appear to exceed" the $1,000,000 underlying liability limits); *Travis v. Walker*, 1991 WL 174661, at *1 (E.D. La. Aug. 30, 1991) (finding that non-diverse defendant Farm Bureau was improperly joined because there was "virtually no possibility that the judgment will exceed the coverage limits" of the underlying policy and the excess policy)). Hallmark essentially adopted Removing Defendants' assertions. ECF No. 18.

Conversely, McLain asserts that district courts have routinely remanded cases where the defendant failed to carry its burden in showing no reasonable possibility of recovery against the non-diverse UM carrier. ECF No. 13-1 at 10 (citing *Cibulski v. Miller*, 2013 WL 950570, at *1 (E.D. La Mar. 11, 2013); *Allen v. Occidental Fire & Cas. Co. of North Carolina*, 2012 WL 1118764, at *1 (E.D. La. Apr. 3, 2012); *James v. Brierfield Ins. Co.*, 2017 WL 6033676, at *1 (E.D. La. Dec. 6, 2017); and *Tureaud v. Kephart*, 2010 WL 1254372, at *1 (E.D. La. Mar. 24, 2010)).

In *Cibulski*, the United States District Court for the Eastern District of Louisiana granted remand where the plaintiff involved in a trucking accident sued her non-diverse UM carrier and the removing defendants alleged $15 million in primary and excess coverage was enough to cover the plaintiff's injuries, but failed to establish the existence of coverage beyond mere argument. 2013 WL 950570, at *5. The district court noted that the "severity of plaintiff's injuries is unknown at this point" and could not find that there was no reasonable basis to predict the plaintiff could recover against the UM. *Id.* McLain asserts that, like the Cibulski defendants, Removing Defendants fail to carry their burden to establish McLain has no reasonable possibility of recovery against Farm Bureau. ECF No. 13-1 at 11. In Cibulski, the removing Defendants came forward with no evidence beyond argument that there was, in fact, $1 million in primary liability coverage and $14 million in excess coverage. *Id.* at *4.

In *James*, the Eastern District granted remand where the diverse removing defendants argued that non-diverse Farm Bureau was improperly joined because there was $6 million dollars in underlying coverage and the plaintiff had no possibility of recovering from Farm Bureau. 2017 WL 6033676, at *2-4. The district court found that the removing defendants did not establish that the underlying primary and excess policies undisputedly provided coverage for the plaintiff's damages, and were not persuaded that there was no possibility the plaintiff could recover from Farm Bureau. *Id.* at *5. The district court found that the "evidence, taken as a whole, indicates that there is a question of fact as to the extent of plaintiff's

damages, as well as to the extent that the plaintiff's claim is covered by the underlying coverage." *Id.* at *4. The district court noted that the removing defendants did not stipulate that it would provide coverage for the plaintiff's damages. *Id.* (noting that attached policies contained numerous exclusions and limitations and were insufficient to show the policies would cover all damages such that plaintiff had no possibility of recovery from Farm Bureau).

McLain asserts this action is virtually identical to *James*. ECF No. 13-1 at 15. McLain argues that, given Hallmark's denials, the Court cannot assume coverage will be provided by Hallmark. ECF No. 13-1 at 15. In *James*, the removing defendants responded to discovery regarding coverage and referred to the policies themselves, which included limitations and exclusions. 2017 WL 6033676, at*4. Here, unlike in *James*, the removing Defendants and Hallmark judicially admit coverage and judicially admit no exclusions or limitations would reduce the available coverage to McLain. *See e.g. Hunter*, 2008 WL 4717067, at *1.

In *Allen*, the Eastern District Court granted remand where the removing defendants asserted the non-diverse UM/UIM carrier was improperly joined because the $1 million in underlying coverage would provide enough coverage for plaintiffs' damages. 2012 WL 1118764, at *1. The district court found it plausible that the removing defendant was underinsured because the plaintiffs' damages may well exhaust the coverage under that policy. *Id.* at *3. In *Allen*, the plaintiff cited cases upholding damages awards in excess of $ 1 million for injuries similar to those she claimed, and the liability policy provided an aggregate limit of $1 million per accident.

22

*Id.* The district court found that the removing defendants failed to carry their burden of demonstrating plaintiff could not recover against the non-diverse UM/UIM carrier. *Id.* at *4.

McLain distinguishes the cases relied upon by Removing Defendants in their Notice of Removal. ECF No. 13-1 at 15. In *Montana*, McLain asserts the court found that the matter had been extensively litigated, and that the court determined from plaintiffs' injuries, medical treatment, and testimony that their symptoms had resolved and would not exceed the underlying coverage. ECF No. 13-1 at 16; *Montana*, 2019 WL 290643, at *4. In *Hunter*, McLain asserts that the parties engaged in discovery, obtained medical records and answers to written discovery, and the only plaintiff claiming injuries initially disputed whether her claims even exceed the $75,000 amount in controversy. ECF No. 13-1 at 16; *Hunter*, 2008 WL 4717067, at *1 (piercing the pleadings and finding that the record demonstrated no reasonability possibility that plaintiffs could recover from the UM carrier). In *Travis*, McLain asserts the court denied remand where there was $110 million dollars available and that it did not provide any facts. ECF No. 13-1 at 16-17; *Travis*, 1991 WL 174661, at *1 (holding that Farm Bureau was fraudulently joined and defendants demonstrated $110 million in underlying coverage, and finding there was "virtually no possibility that the judgment will exceed the coverage limits").

In *Hunter*, this Court denied remand where the removing defendants asserted improper joinder of the UM insurer and presented summary-judgment-type evidence demonstrating there was no reasonable basis to predict Hunter would recover more

than the $1 million liability policy and have an UM claim against. *Hunter*, 2008 WL 4717067, at *1-3. The removing defendants attached a copy of the declarations page and policy to the notice of removal and stated it issued $ 1 million in liability coverage. *Id.* at *3. After deeming as judicial admissions removing defendants' clear implications that the policy provided coverage, the Court reviewed discovery in connection with the motion and determined Hunter's treatment was conservative in nature. *Id.* The Court further determined Hunter's modest injuries would never approach an award of anywhere near $ 1 million and found the UM carrier was improperly joined. *Id.*

Through evidence and a quantum, Removing Defendants assert that the combined damages of all claimants will not exhaust the limits of the Cherokee and Hallmark policies. ECF No. 17 at 20. Removing Defendants assert that the combined potential total damages of all claimants are estimated to be $2,963,966.27. *Id.* In support, Removing Defendants attach Scotty's statement of funeral expenses (ECF No. 17-2), burial expenses (ECF No. 17-3), memorial contract (ECF No. 17-4), flower expenses (ECF No. 17-5), and the economic expert report of McLain's expert, Charles O. Bettinger, III ("Bettinger") (ECF No. 17-6). Removing Defendants also attach Farm Bureau's Petition for Damages (ECF No. 17-1 at 1-5).

McLain does not address the quantum and does not cite any cases refuting the quantum presented by Removing Defendants and Hallmark in their oppositions to her motion. ECF Nos. 19, 31). However, Removing Defendants and Hallmark bear the heavy burden of proving improper joinder. *Smallwood*, 385 F.3d at 574-75.

24

The summary-judgment-type evidence shows Farm Bureau paid $37,922.15 in property damages under the collision coverage under McLain's automobile policy, $5,000 in medical payments on behalf of Scotty, $5,000 in medical payments on behalf of White, and $5,000 in death benefits on behalf of Scotty. ECF No. 17-1 at 2-3. Farm Bureau also asserts the $500 deductible on behalf of McLain. ECF No. 17-1 at 3. Thus, Farm Bureau's potential recovery is estimated to be $53,422.15. ECF No. 17 at 13.

Removing Defendants argue that White claims past, present, and future damages for pain and suffering, mental anguish, disability, loss of enjoyment of life, medical expenses, lost wages, and earning capacity. *Id.* Removing Defendants represent that documentation they received shows White's medical expenses total $121,147.38. *Id.* Removing Defendants also represent White is undergoing a possible knee surgery and back surgery. *Id.* Removing Defendants assert that even with resolution of causation issues in White's favor, White's total damages "leave more than enough available coverage under the Cherokee and Hallmark policies" such that McLain will have virtually no potential recovery of the Farm Bureau policy. ECF No. 17 at 13-14.

Removing Defendants contend that general damage awards for lumbar surgeries range from $115,000 to $250,000. ECF No. 17 at 14. Removing Defendants also contend that general damage awards for knee surgeries range from $32,000 to $150,000. ECF No. 17 at 15. Thus, Removing Defendants assert that White's general damages, past medical expenses, and future medical expenses total approximately

$621,147.38 at the high end of the range. ECF No. 17 at 17. Removing Defendants assert White's and Farm Bureau's potential combined recovery leave $6,000,000 remaining in available coverage. Yet, no evidence has been presented establishing the value of White's claims.

Removing Defendants argue McLain's damages will not exhaust the alleged remaining available coverage under the Cherokee and Hallmark policies. ECF No. 17 at 17. The evidence presented by Removing Defendants includes the funeral expenses of McLain in the amount of $12,033.89 (ECF No. 17-2), burial expenses in the amount of $925.00 (ECF No. 17-3), a memorial contract in the amount of $1,744.10 (ECF No. 17-4), flower expenses in the amount of $548.75 (ECF No. 17-5), and the Bettinger report analyzing the present value of McLain's economic losses estimated to total $1,524,145.00 (ECF No. 17-6 at 1-3. Removing Defendants argue McLain may recover general damages ranging from $150,000.00 to $500,000.00. ECF No. 17 at 19. Assuming McLain could potentially be awarded up to $500,000.00 in wrongful death damages and $250,000.00 for Scotty's survival action, Removing Defendants contend McLain's total award would be $2,289,396.74. ECF No. 17 at 20. Thus, Removing Defendants contend that even at the highest range of awards as to all three claimants that total damages likely won't exceed half of the $7,000,000 of available coverage. ECF No. 17 at 21.

Hallmark references and adopts Removing Defendants' opposition and quantum analysis and cites its own quantum of wrongful death and survival action damages. ECF No. 18 at 6. While recognizing that this Court cannot determine the

amount of damages recoverable, Hallmark contends that the Court must determine whether McLain has a reasonable basis to recover more than the $7,000,000 in damages. ECF No. 18 at 6. Hallmark attaches its Declarations page (ECF No. 18-1) and the Bettinger report (ECF No. 18-2 at 1-3).

Hallmark also argues that, although survival action damages are across the board for a decedent who perishes in a motor vehicle accident, they rarely eclipse $500,000. ECF No. 18 at 6. Hallmark further argues that wrongful death damages rarely exceed $500,000 for the loss of a spouse. ECF No. 18 at 7. Hallmark contends that the highest possible award, including the Bettinger report's $1,524,145 estimate for loss of future earnings, "does not approach a fraction of the $7,000,000 available coverage." ECF No. 18, p. 7. Hallmark also filed a Supplemental Memorandum in Opposition (ECF No. 26) asserting Cherokee tendered its $2,000,000 primary policy in settlement with McLain and White. ECF No. 26 at 2. Hallmark asserts White and McLain reserved their rights against Hallmark and Farm Bureau in a *Gasquet*[21]

---

[21] *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La. App. 4 Cir. 1980). A *Gasquet* agreement has "become a term of art among Louisiana jurists and lawyers to describe a type of release." *Aggreko, L.L.C. v. Chartis Speciality Ins. Co.*, 942 F.3d 682, 696 (5th Cir. 2019) (citing *RSUI Indemnity Co. v. American States Ins. Co.*, 127 F. Supp.3d 649, 657 (E.D. La. 2015)). The Fifth Circuit described a *Gasquet* agreement as follows:

> [B]y executing a *Gasquet* release in a settlement agreement, a plaintiff (1) releases the primary insurer entirely, and (2) releases the insured from all claims which might be recovered from the insured directly, reserving claims against the insured *only* to the extent that *collectible* coverage is afforded by an excess insurance policy. Procedurally, after a *Gasquet* release is executed the insured remains in the lawsuit as a "nominal" defendant while the plaintiff pursues recovery from the excess insurer.

*Id.* (citing *RSUI Indemnity Co.*, 127 F.Supp.3d at 658) (alterations omitted) (internal quotation marks and citation omitted)). Thus, in the case of a *Gasquet* agreement, the insured(s) remain as a "nominal" defendant to the extent of "collectible coverage" under the

agreement with Cherokee.  ECF No. 26 at 2.  McLain does not dispute settlement with Cherokee and asserts the settlement has no bearing on her remand motion.  ECF No. 31 at 3.

However, the Court cannot state that there is no reasonable basis to predict that McLain might be able to recover against Farm Bureau.  Though Removing Defendants and Hallmark presented summary-judgment-type evidence of Farm Bureau's subrogation claim amounts, no summary-judgment-type evidence was presented and no undisputed facts were established regarding White's quantum of damages for the Court to determine the potential remaining coverage available to McLain.  The severity and extent of White's injuries are unknown.  Therefore, the Court cannot determine the potential remaining coverage available to McLain under the Hallmark excess policy.  If McLain cannot recover sufficient recovery from Hallmark for any reason, McLain may proceed against Farm Bureau as her UM insurer.  The Court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff.  *Travis*, 326 F.3d at 649.  Therefore, Farm Bureau, a Louisiana citizen, is a properly joined party and this Court lacks subject matter jurisdiction.

---

excess insurance policy. *Tipton v. Landen*, 2016 WL 919539, at *1 (W.D. La. Mar. 8, 2016 (citing *Gasquet*, 391 So.2d 466).  The Court notes that McLain's *Gasquet* settlement with the diverse Defendants has no bearing on its analysis of improper joinder of non-diverse Farm Bureau.

E.    McLain is not entitled to attorney's fees.

An order remanding the case may require payment of just costs and actual expenses, including attorney's fees, incurred as a result of the removal.  28 U.S.C. § 1447(c).  However, an award of attorney's fees on a motion to remand is not automatic under Section 1447(c).  *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).  A district court may only award payment of fees and costs under Section 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal.  *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538 (5th Cir. 2004).

The stated basis for removal was the alleged improper joinder of non-diverse Farm Bureau on the basis that McLain has no potential recovery.  ECF No. 1.  The removal was objectively reasonable as Removing Defendants demonstrated a reasonable basis to believe removal was legally proper.  McLain's Motion for Attorney Fees (ECF No. 13) should be DENIED.

III.  Conclusion

Because Removing Defendants and Hallmark fail to establish that there is no reasonable basis to predict that McLain might be able to recover against non-diverse Defendant Farm Bureau; because Farm Bureau's Louisiana citizenship destroys diversity; and because Removing Defendants demonstrated an objectively reasonable basis for removal;

IT IS RECOMMENDED that McLain's Motion to Remand (ECF No. 13) be GRANTED and that McClain's Motion for Attorney Fees (ECF No. 13) be DENIED.

IT IS FURTHER RECOMMENDED that, to the extent McLain seeks to strike this Court's Order (ECF No. 25) allowing Hallmark's Supplemental Opposition (ECF No. 26), McClain's motion (ECF No. 31) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 24th day of January 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE